Good morning, Your Honors. Donald Cook for the Plaintiff, Mr. Santos. The Court would just indulge me. Same facts, procedural facts, but let's reverse the roles. Mr. Santos asked for a discovery cutoff date more than 90 days before the trial date, and the Court grants it. The defense files their expert reports timely under the Rule 26. Plaintiff does not. The time comes and goes for filing supplemental expert reports. Plaintiff does not file them, and more time passes. Then Plaintiff thinks better of his original strategy and decides, well, gee, I would like to file some expert reports. I think if you run those set of facts before lawyers familiar with federal practice and the requirement for good cause, I think the lawyers would probably tell you that you have a better chance of winning at keno than you have showing good cause to amend a scheduling order, setting a timeline for disclosing experts. It's not going to be granted. Look, if this is the rule, that all you have to do to amend a scheduling order. Isn't this expert thing all sort of moot? Don't we really need to talk about the summary judgment and the discovery issues? That is one of the issues I want to address. I start with the expert issue because it is, frankly, difficult for me to comprehend how that order could be made when I know that if I were ever in that position, I would never get an order like that amended on the kind of showing that was made here. As far as the summary judgment, look. Actually, what I'd really like to start with, if you don't mind, is the discovery. Well, sure, and that ties exactly in with the summary judgment motion, right? We ask for the use of force investigation files because, obviously, under Monell, we're trying to establish a pattern or practice. Is it your view that when one sues under Monell, one needs to have some sort of indication that there is a Monell violation in order to get the discovery? Or would you feel that if there is an individual case, there should be some Monell discovery just sort of on general principles? Well, we had the allegation of a Monell claim against Culver City, its police department. That entitles us to pursue discovery. We had in this particular case — What would you rely on for that point? Well, personally, I rely on the fact that, well, I'm familiar with Ted Cook of the Culver City Police Department and the Culver City Police Department. And I know when — anyway. And in this particular case, this particular case, there were, for example, the photographs of Mr. Santos's injury. These are the photographs taken by the police department before he's treated, which were rather important. But what Judge Wilken is asking you is in order to get discovery of a general practice, do you have to make a showing other than the individual case? Isn't that like kind of like what comes first, the chicken or the egg? I mean, you have a claim under Monell. You have to, in effect, what, present some substantial showing before you can get the discovery to prove the case? Or some insubstantial showing or some hint or possibility, something? I don't think that's just an individual claim enough to justify Monell discovery. Maybe it is, and maybe there's some case law that says so. That's what I'm asking. The answer is yes. As far as a case that says — that answers the question just in the way it's been framed here, I can't give you one off the top of my head. And then I have a question about what actually happened. There's some discussion at the hearing with the magistrate judge about what discovery should be allowed. It's a little inconclusive. An order is submitted, drafted by the defendant. Did you have an opportunity to approve that as to form? Or it's not totally clear that the way the order was written comported with what was said at the hearing. And then, furthermore, what's not clear is what discovery was actually undertaken pursuant to that order. It said you could get the Pernell and the Zerbe documents, or you could have access to all the administrative tort claims. Did you get that access? Did you look at those administrative tort claims? Could you just fill out a little bit about what happened there? We were given access to the complaints against Pernell and Zerbe, the force investigations involving Pernell, okay? Because Pernell was the officer who was alleged to have struck our client on the head. Zerbe was present. That's what we got. In the alternative, you had the option, it seemed, to be given access to the administrative tort claim files. Did you do that? No, we did not pursue the administrative tort claims because, frankly, the administrative tort claims are of very marginal significance. You know, tort claims are filed by individuals who, as a precursor to filing a State lawsuit. It's not a document prepared by the City. We were really interested in the force investigations of the City because that tells us what the City practice is, how they conduct their investigations. That's what we really wanted. That we did not get. And it was that type of widespread practice evidence that the defendant cited its absence of, its absence that justified granting summary judgment. Did you get copies of the Department's policies on internal investigations, or did you have the opportunity to depose a Department official on how they handled these kinds of complaints? Well, I first got their Department policy investigations in 1988, my first case against Culver City. And it was rather interesting. I did have the formal written policy. But the formal policy is, as these things are, rather vague in general. And what we were interested in is getting the, how the Department actually conducts its investigations, what kind of evidence they look at. We wanted to give it to our expert, David Dotson, former LAPD Deputy Chief, so that he could opine on the adequacy of their investigations, much as the late Dr. James Feist did in Loures v. City of Los Angeles. I mean, that was our methodology. That's why we wanted the force investigation. And we couldn't get the force investigation. And then, of course, they moved for summary judgment, saying, gee, where's that widespread practice that you need to prove your Monell claims? Well, yeah, we tried. But we couldn't get it. Well, the other question is, where is the evidence of causation? Assuming there is a lack of a tracking system, assuming there is arguably inadequate investigations, what's the evidence of causation of this? The evidence of causation is, you have the expert declaration of former Deputy Chief David Dotson. You don't track uses of force. Certain things are going to happen. Officers get the message that they can do, that they can engage in misconduct. The Department's not going to follow up on it. It makes it more likely that it will happen. Is it an ironclad rule? Is it like the second law of thermodynamics? No. But that's not the standard here. The standard is, what is likely to happen? Our evidence of causation would have been the practice of the Department's force investigations, coupled with what that practice means to the line officers. And that's where David Dotson's expertise. Doesn't he also need to show that the Department had never disciplined any officers for excessive force? No. There are, LAPD has had a history of disciplining officers for excessive force. I thought we were talking about Culver City. That's true. My point is, my point is, go to Larez's case, which, again, was our model here of what we were trying to do. Is it the case the LAPD had never disciplined an officer for excessive force? No. That's not true. Obviously, they had. The key factor is, is what is the practice? And the fact that you're under two minutes. Yes, I would. And just it was wrong to dismiss the city in the State law claims. Thank you. Good morning, Your Honors. May I please the Court? June Choi on behalf of the appellees. I guess I should address some of the points that Mr. Cook made. First being that it is well established that a Monell claim cannot be based on evidence related to the underlying incident. You do need evidence from a number of other incidents that support the theory that the alleged constitutional violation in that particular case was caused by a practice or custom of the municipality. You need that to get discovery? I was addressing the Monell claim. What do you need? For the Monell claim, you have to show what happened in the other incidents. That's true, Your Honor. That's true, Your Honor. And so that's what they asked for discovery of, isn't it? They did get it. They did. I think the discovery issue has to be sort of looked at it from a big picture here. The original request for production of documents were very broad. And what the magistrate did, using his discretion after an extensive hearing, was narrowing the scope of the discovery, but still providing the plaintiff with ample discovery relating to the defendants in question, also with respect to other incidents involving uses of force, discrimination, harassment. Where did he give them the availability of other incidents of use of force? It would be the other incidents of force involving the officers in question. Also, I believe the ---- But wait. You told us the way you prove a Monell claim is to show what the city does generally in other incidents. And so they asked, what does the city do in other incidents? Can we see the records? And you say the magistrate said, no, all you can see is this particular officer. I don't ---- I believe the magistrate's order was not that limited. The ---- Well, show us in the order what you think gave them the opportunity to develop the Monell claim. Okay. Well, what have ---- I apologize. I only have the district court's order denying their motion for reconsideration in front of me. And ---- Well, didn't your firm draft the form of the order for the magistrate? I mean, I don't have it. You didn't bring it to court? It might be in my bag, but I'm not sure if I want it to. Well, if it would help. Okay. All right. You probably ought to get it. Counsel, I have it starting at ER 154, if that helps. I'm looking at the order regarding plaintiff's motion to compel, June 21, 2004. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Well, in the magistrate's order, the defendants were ordered to produce complaints and investigations of claims involving officers Pernell, Zerbe, and Wolford in the prior five years regarding any claim of dishonesty, untrustworthiness, or other credibility issue. And that's just on the first, I guess, page two of the order. The district court actually modified the order to expand it by ordering the defendants to produce documents relating to racial animus or allegations of racial animus as well. And I think the district court, this is on the second page of the order of the district court, denying their motion for reconsideration of the magistrate's order. The court said the court reverses the magistrate judge and orders defendants to produce all claims made within the last five years of racial discrimination against Pernell, the officer who admits apprehending plaintiff and Zerbe, his partner. And also, the defendants, the plaintiffs were not precluded from pursuing additional discovery subsequent to the magistrate's order. They were invited to produce, submit additional briefing regarding additional depositions that they may require. They were not precluded from taking depositions of, for instance, I believe the lieutenant, who allegedly, according to the plaintiff, may have been involved in the lost photographs, which I wanted to make the point earlier that the photographs really. Kagan. Is it your view that there needs to be some sort of threshold showing of a Monell violation before you can get Monell discovery? And if so, what would be your authority for that proposition? We never argue that down below, and I don't think that's the position we take. I think the position you take, why aren't they entitled to see what the city's record of performance is on use of force? If you look at the request for production in this case, the one I recall off the top of my head is they wanted reports or investigations involving any use of force, involving any Culver City police officer. There were two things, one use of force and also excessive force. And they asked for each. I believe it was just the original RPD asked for any use of force. And what the district court found wrong with that was if you have a justified use of force, that would fall within the scope of that. They narrowed it to excessive force, but then they further narrowed it to excessive force only with these two actors and not excessive force by other people in the department or investigations of excessive force by, in cases involving other people, other police officers. So the original request was broad. It was narrowed, but it was narrowed quite a lot. It could have been narrowed in a different way, I guess. Well, as we argued in the appellate briefs, the original, I guess the decision that's up on appeal that they're challenging is the district court's denial of the motion for reconsideration of the magistrate judge's order. And we believe the district court, within broad discretion reported to the district court, exercised it in a fashion that does not constitute a reversible abuse of discretion. And the — I think the discovery issue really isn't as pivotal to this appeal as the underlying analysis in the motion for summary judgment. If I could address an issue that's not related to the discovery issue, the negligence claim that the plaintiffs argue about both below and on appeal, the district court correctly found that the California Supreme Court's case in Eastburn and the Court of Appeals' opinion in Munoz, both relatively recent cases, considered the argument that a negligence claim against a public entity can be alleged against — can be pursued under Civil Code section 1714. And both courts, including the California Supreme Court, roundly, resoundingly rejected that argument. And for whatever reason, the plaintiffs did not brief either of those cases. They still rely on Civil Code section 1714, even though the California Supreme Court has made it clear that that cannot be the basis for a liability claim — excuse me, a negligence claim against a public entity. And as to the causation issue, Mr. Cook mentioned what the expert witness, Mr. Dotson, purportedly said in his declaration. As the district court noted, even Mr. Dotson didn't say that the failure — a policy of not tracking uses of force caused the underlying assist force claim. Mr. Dotson never reached that conclusion. I couldn't say because he couldn't show that there was a failure to implement an underlying policy, because the facts weren't developed. So how could he say? He could say — all he could say was, in theory, that the failure to implement a policy of investigating properly, disciplining properly, has an effect. Well, I — It seems to me that's fairly inaccurate. With all due respect to the concerns raised here, I think the underlying problems with the discovery was the way that the original discovery was drafted. You know, and if the magistrate judge takes certain steps to modify it, and absent the showing, I don't think the — on appeal, the plaintiffs have demonstrated why the magistrate's analysis and the district court's analysis, in response to the original very broad and very vague request for production of documents, constituted abusive discretion. Okay. Thank you, counsel. Do we have a minute and a half of rebuttal? A minute and 35 seconds. Thank you. At ER 220, we're seeking the force investigation files, including where employees improperly used excessive force. We didn't get those records. We should have gotten those records. Well, if you had started with the tort claims, though, wouldn't that have given you a list of all the claims that had been made against the city, so that you could have then gone back to the district court and said, okay, here are the specific cases that I want discovery on? No, because tort claims do not purport at all to track either all uses of force or uses of force where there's a complaint made of excessive force. Tort claims are prepared by someone who is thinking of filing a lawsuit. Not only a lawyer, right, as a precursor to filing a civil rights act. Sometimes a lawyer, sometimes a civilian. All I'm saying is tort claims, while they are a source of information and can give you leads, they are not by any means comprehensive. They don't purport to track. But what I don't understand, Mr. Cook, is the district court gave you that discovery, but you didn't avail yourself of it. And if that's the first step in the investigation, why didn't you take it and then come back and say, now here's specific incidents that I want discovery on, to which I think demonstrate my own health? Because tort claims are not comprehensive. A force tracking system is. But there isn't a force tracking system. So the district court said, fine, in lieu of going back through every arrest report for five years by 120 officers, start with the tort claims. And you didn't do that. We asked for, give us the complaint investigations because there is a policy, a written policy that says Culver City must investigate complaints of excessive force. We asked for those files. We never got them. We were never allowed to depose Chief Cook. We were never allowed to depose, I mean, this is the alternative means of proving city liability, is use Cook to establish city liability like Dolores Plankton used Darrell Gates to establish LAPD liability. Why didn't you go back after they gave you those stonewall answers to your interrogatory requests that the magistrate allowed you to propound to Chief Cook and to the captain and say, look, Judge, they're stonewalling us on this. Now we want to take the depositions of these folks. We did ask the district judge to strike monolingual declarations of importance. But that's not a motion to compel his deposition. The reasoning would be the same. If they are stonewalling us from precluding from deposing policymakers, then they shouldn't be allowed to use their declarations. Judge Collins obviously disagreed with us. We think that was wrong. I just don't understand why you didn't use the procedures that the Federal Rules of Civil Procedure provide in order to seek relief for the stonewalling by the defendants. I submit we did. We brought a motion to compel. We sought and obtained extensions on the discovery cutoff. But in response to your motion to compel, the magistrate judge entered this discovery order, which included take the first step by interrogatories. And if that's not good enough, then come back. And you didn't do that. We have a discovery cutoff, a second discovery cutoff. We simply run out of time to have to jump through all the procedural hoops continually. You didn't ask the district court to reopen because they're stonewalling you on discovery. You didn't do that. You're right. We could have done that. But at a certain point, you run out of time after having already asked for and obtained extensions and having them fight you. That's like what's happened here. You run out of time. That's right. Thank you very much for the extra time. Thank you, counsel. The case to be adjourned will be submitted.
judges: Reinhardt, Tallmkan, Wilken